UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MARK A. MILLER and SUSAN MILLER et al.,

                          Plaintiffs,                  MEMORANDUM AND ORDER
                                                              CV 05-3069

      -against-

                                                                (Wexler, J.)

BOARD OF MANAGERS OF WHISPERING
PINES AT COLONIAL WOODS
CONDOMINIUM II, GORDON RHEIKOFF,
FRANK HAYES, ROBERT MORRIS,
RUSSELL HARDY, SETH BERMAN,
DENIS MURPHY, JANE ROE MURPHY,

                          Defendants.
----------------------------------------------------------------x

APPEARANCES:

      EDWARD M. GOULD, ESQ.
      Attorney for Plaintiffs
      374 Islip Avenue, Suite 104
      Islip, New York 11751

      SAPIR & FRUMKIN LLP
      Attorneys for Defendants
      399 Knollwood Road, Suite 310
      White Plains, New York 10603

WEXLER, District Judge

      Plaintiffs Mark A. Miller and Susan Miller, husband and wife, bring this action against defendants Board of Managers of Whispering Pines at Colonial Woods Condominium II ("Board"), Gordon Rheikoff, Frank Hayes, Robert Morris, Russell Hardy, Seth Berman, Denis Murphy, and Jane Roe Murphy, asserting (1) claims for violation of their constitutional rights under 42 U.S.C. §§ 1983 and 1985(3); (2) claims

for violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq.; and (3) supplemental state claims. Defendants move to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for failure to state a claim upon which relief can be granted. Plaintiffs oppose the motion.

I.  BACKGROUND

The allegations of the complaint, accepted as true for purposes of this motion, can be summarized as follows. Plaintiffs were the owners of a condominium unit known as 18 Jefferson Commons, within the Whispering Pines Condominium complex in Yaphank, New York. Mark Miller is an employee of Verizon telephone company. Susan Miller is employed as an exotic dancer; she has performed in various locations patronized by members of the Board.

Defendants sought to compel plaintiffs to leave the condominium by making it impossible or impracticable for them to live there through various conduct including "intimidation, interference, coercion, investigation, enforcement proceedings and/or judicial or other processes." Complaint ¶ 16. Beginning in April 2001, Susan Miller was subject to "public heckling" as she walked or drove through the complex. Id. ¶ 17. The heckling included statements such as "why don't you get out of here, we have all seen your ass." Id. The heckling occurred "every day" during the summers beginning in 2001 and escalated in the spring of 2003 through 2004. Id.

Plaintiffs also had problems with the condition of their condominium unit. During prolonged periods of rain, water collected in front of their unit, with broken gutters from adjoining units contributing to the flooding. Plaintiffs' complaints to the Board were ignored. The condition was worsened by the sprinkler system, and plaintiffs' requests to modify or turn off the system near the unit were ignored. Summer rains ultimately compounded the condition, causing a flood in their daughter's bedroom. Plaintiffs complain that they bore the cost of provisional repairs, performed by outside contractors as arranged by the Board, through increases in their monthly maintenance fee. Those fees continued to grow, and plaintiffs' homeowners' insurance company canceled plaintiffs' policy due to the detrimental condition of their unit's exterior.

Around August 2001, the Board "feigned complaints" to Verizon, Mark Miller's employer, claiming that he was parking Verizon vehicles behind his unit. Id. ¶ 19. Such conduct would be a violation of Verizon policy and would subject him to termination. Because Mark Miller was on disability, the complaints were dismissed by Verizon. Thereafter, "[c]onfrontational incidents" between plaintiffs and the individual defendants heightened. For example, in or around August 2001, Denis Murphy stated to Mark Miller, "I will break your arms if you don't leave. If you don't, you may never come home!" Id.

In the fall and winter of 2003, plaintiffs placed their unit for sale with various real estate firms. After entering into contracts, title searches disclosed that the Board had filed

a lis pendens on plaintiffs' unit. Thereafter, plaintiffs' monthly maintenance fee increased again.

In January 2004, the Board brought a foreclosure action to compel the sale of plaintiffs' unit, claiming plaintiffs were in arrears for $12,530 in common area maintenance and management charges. Plaintiffs asserted various counterclaims in the foreclosure action. The Board offered to reduce the amount sought for the unit if the plaintiffs discontinued their counterclaims. Plaintiffs refused.

Plaintiffs then filed this action, asserting (1) claims for violation of their constitutional rights under 42 U.S.C. §§ 1983 and 1985(3); (2) claims for violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.; and (3) supplemental state claims. In their § 1983 claims, plaintiffs assert that defendants intentionally discriminated against them by interfering with plaintiffs' property rights in their unit in violation of due process and equal protection. In their § 1985(3) claims, plaintiffs assert that defendants conspired to deprive them of due process, equal protection and/or equal privileges and immunities. As for their FHA claims, plaintiffs assert violations of §§ 3604, 3605, and 3617 of the FHA based on defendants' coercive and intimidating conduct and retaliation. Plaintiffs' supplemental state claims include claims for, inter alia, abuse of process, false arrest, malicious prosecution, and negligence. Defendants move to dismiss the complaint.

II. DISCUSSION

A. Legal Principles on Motion to Dismiss Under FRCP 12(b)(6)

On a motion to dismiss under FRCP 12(b)(6), the allegations in a plaintiff's complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam). It is well settled that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Maggette v. Dalsheim, 709 F.2d 800, 803 (2d Cir. 1983). The Court considers defendants' motion, guided by these principles.

    A. Section 1983 Claims

Defendants argue that plaintiffs' § 1983 claims are insufficient because, inter alia, plaintiffs do not, and cannot, allege state action or that defendants acted under color of state law.

To state a claim under § 1983, a plaintiff must allege that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution or federal laws." Perry v. Metropolitan Suburban Bus Auth., 390 F. Supp. 2d 251, 262 (E.D.N.Y 2005). In other words, § 1983 "addresses only those injuries caused by state actors or those acting under color of state law." Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).

Plaintiffs do not allege that any defendant is a state entity, official or employee. Indeed, a condominium board is a private entity. See Rotblut v. 333 E. 66th St. Corp., 1996 WL 586353, at *2 (S.D.N.Y. Oct. 11, 1996). Rather, plaintiffs argue that state action exists under the "public function" test and/or the "state compulsion" test. See, e.g., Archer v. Economic Opportunity Comm'n, 30 F. Supp. 2d 600, 605-06 (E.D.N.Y. 1998) (articulating three tests formulated by Supreme Court for determining existence of state action: (1) "symbiotic relationship" test; (2) "state compulsion" test; and (3) "public function" test); see also Perry, 390 F. Supp. 2d at 262 (factors to consider in determining whether activity may be attributable to state include: "(1) when the state exercises its coercive power or significant encouragement; (2) when a private actor is a willful participant in joint activity with the state; (3) when an entity is controlled by the state or an agency thereof; (4) when an entity has been delegated a public function by the state; (5) when an actor is entwined with governmental policies; or (6) when the government is entwined in the entity's management or control").

To satisfy the state action requirement under the "public function" test, the private entity must "perform a function that is 'traditionally the exclusive prerogative of the state.'" Archer, 30 F. Supp. 2d at 606 (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982)). Plaintiffs argue that the public function test can be satisfied because the Board is the sole provider of water to the complex, operates and maintains a waste water treatment plant exclusively for the residents, and owns and maintains the roads and sidewalks. Under these circumstances, according to plaintiffs, there is a "substantial

indicia of carrying out a public function." Memorandum of Law in Opposition to Defendant(s) Motion to Dismiss the Complaint ("Plaintiffs' Mem."), at 5.

Under the "state compulsion" test, the existence of state action "requires that a state 'exercis[e] coercive power or . . . provide such significant encouragement, either overt or covert, that the [decision] must in law be deemed that of the State.' " Archer, 30 F. Supp. 2d at 605 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Plaintiffs argue that this test can be satisfied under the circumstances because the "Board defers to the actions of it's [sic] board president, Gordon Rheikoff[,] who deprived the plaintiff[s] of use and enjoyment of their property." Plaintiffs' Mem. at 6.

Contrary to plaintiffs' argument, the Court finds that plaintiffs' fail to plead state action under the public function test. Despite plaintiffs' arguments, the supplying of utility service is not "traditionally the exclusive prerogative of the State." See, e.g., Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974). Indeed, a heavily regulated, privately-owned utility is not necessarily a state actor. See id. at 358-59. Plaintiffs fail to plead circumstances that can satisfy the public function test.

The Court also finds that plaintiffs fail to plead state action under the state compulsion test. There is no indication that there existed any coercion or encouragement of a state entity, official or agent in the complained of conduct. Accordingly, plaintiffs fail to plead circumstances that can satisfy the state compulsion test.

Because plaintiffs fail to plead that their injuries were caused by state actors or those acting under color of state law, their § 1983 claims are dismissed.

B.  Section 1985 Claims

As for plaintiffs' § 1985(3) claims, defendants argue that these claims are insufficient because, inter alia, plaintiffs do not, and cannot, plead that defendants engaged in racial or otherwise class-based, invidious discrimination.

Section 1985(3) prohibits two or more persons from conspiring to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ."  42 U.S.C. §1985(3). Section 1985(3) does not create any substantive right; rather it provides a remedy for conspiracies to violate a person's right to equal protection.  See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir. 1996).  To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  Significantly, the conspiracy must be motivated by " 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' "  Id. (quoting Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).

Upon consideration, the Court finds that plaintiffs fail to sufficiently allege racial or otherwise class-based, invidious discrimination behind defendants' alleged conduct. None of defendants' conduct is alleged to be motivated by race or otherwise class-based,

invidious discriminatory animus. Rather, the complaint appears to allege that defendants' conduct was motivated by Susan Miller's occupation or some personal animus.

Accordingly, plaintiffs' § 1985(3) claims are dismissed.

### C. Fair Housing Act Claims

Defendants argue that plaintiffs' FHA claims are insufficient because plaintiffs fail to allege that defendants engaged in conduct prohibited by the FHA or that defendants' retaliated against plaintiffs for engaging in activity protected under the FHA.

The FHA prohibits discrimination regarding housing based on race, color, religion, sex, handicap, familial status, or national origin. See 42 U.S.C. §§ 3604, 3605, 3606. Section 3617 prohibits retaliation for exercising rights under the FHA. See id. § 3617 (making it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [, inter alia, §§ 3604, 3605, and 3606]"). To state a claim for retaliation under § 3617, a plaintiff must allege that (1) the plaintiff was engaged in protected activity, (2) the defendant was aware of that activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002). Protected activity under the FHA refers to "action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).

As defendants argue, plaintiffs fail to allege that defendants discriminated against them based on race, color, religion, sex, handicap, familial status, or national origin. Susan Miller's occupation as an "exotic dancer" is not a class protected by the FHA. Similarly, plaintiffs fail to allege that they were retaliated against for engaging in protected activity as required under § 3617.

Accordingly, plaintiffs' FHA claims are dismissed.

D. Supplemental State Claims

Based on the dismissal of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over plaintiffs' state claims.

Accordingly, the state claims are dismissed without prejudice.[1]

III. CONCLUSION

For the above reasons, defendants' motion to dismiss the complaint is granted as to the federal claims and denied as to the supplemental state claims. The Clerk of Court is directed to enter judgment and to close the file in this action.

SO ORDERED.

                                        _____/s/_____
                                        LEONARD D. WEXLER
                                        UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       September 29, 2006

---

[1] To the extent that any of the state claims, such as false arrest or malicious prosecution, may be construed as asserting federal claims under § 1983, those claims must be dismissed for failure to allege state action, as discussed above regarding plaintiffs' § 1983 claims.